UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JULIA ARROWOOD       :
              :
v.             :   Civil No. CCB-05-1402
              :
SUPERVALU, INC.       :

## MEMORANDUM

Now pending before the court is defendant's motion for summary judgment. The issues have been fully briefed and a hearing was conducted on January 13, 2006. For the reasons that follow, the defendant's motion will be denied.

## BACKGROUND

On the afternoon of January 11, 2005, plaintiff Julia Arrowood ("Arrowood"), after proceeding through the checkout line at the Save-A-Lot grocery store, slipped and fell on what she alleges was cottage cheese dropped by another customer a few feet from the register. Arrowood alleges that the store was negligent in failing to prevent her fall and ensuing injury because it failed to exercise reasonable care in cleaning up or warning patrons of the spill. As surveillance footage of the check-out area was submitted as evidence, the court will now recount what is revealed in that footage. (*See* Plf's Opp'n to Mot. for Summ. J., Exhibit A.)("Exhibit A")[1]

At approximately 4:23:20, a patron wearing a red wool cap proceeds through the check-

---

[1] The footage runs from 4:22:30 to 4:56:36, a period of approximately 34 minutes. However, the relevant footage runs from approximately 4:23:00 until approximately 4:27:10. At oral argument, counsel stated that the time-stamp on the footage is actually one hour ahead and that the accident actually occurred at the three-o'clock hour. Nevertheless, the court will reference the time as it is reflected on the footage itself. Unless otherwise indicated, all accounts of the events of that day are taken from the submitted footage.

out line in question and, as he or she turns from the cashier, can be seen dropping a container onto the floor.  While there was some dispute at oral argument, plaintiff has submitted evidence to support a finding that the dropping of the container resulted in cottage cheese being spilt on the floor.[2]  At the moment of the spill, plaintiff alleges that the cashier, as well as other patrons, turn their heads to observe the spill. At this point, Arrowood is fourth in line and does not appear to be in a position to see what happened.  The spill is on the floor just a short distance beyond the cashier and in the direction of the exit. The patron who spilled the cottage cheese then moves a small trash can which was located a few feet from the cashier and places it on or near the spill, ostensibly to act as a warning to others.  A little over a minute later, at 4:24:43, another store employee walks from two registers away toward the check-out line in question, stepping just inches from the spill. This employee again walks within inches of the spill on her return trip.

      Finally, at approximately 4:26:12, the patron who spilled the cottage cheese, after appearing to "stand guard" in front of the spill for a moment, appears to lean in toward the cashier in question and, judging by the cashier's reaction, say something to the cashier before

---

[2] First, the footage plainly shows the container dropping on the ground. (*See* Exhibit A at approximately 4:23:20.) That the container is later identified as a cottage cheese container does not appear to be contested. Second, both the plaintiff and the plaintiff's step-daughter offered deposition testimony that spilt cottage cheese was that on which the plaintiff slipped.  (*See* Defs Mot. for Summ. J, Exhibits A & B.) Third, the patron who purchased the container of cottage cheese is seen throwing away the container, an act that would seem hard to explain if the contents had not fallen from it. (*See* Exhibit A, starting at approximately 4:23:20.) Finally, the footage shows, and it is uncontested, that the patron who dropped the container proceeded to place a small trash can to the spot where the container fell, directly in the path which customers must take to exit the store. (*See id.* at approximately 4:23:38.)  No explanation is offered for this placement of the trash can besides that it was done to mark or draw notice to where the cottage cheese was allegedly spilt.  In fact, while at oral argument defense counsel seemed to question whether any cottage cheese was spilt at all, defendant's motion for summary judgment seems to concede that there was. (*See* Def's Mot. for Summ. J. at 5.)

exiting the store.  After appearing to acknowledge the patron's comment, the cashier also appears to look down at the location of the spill and acknowledge it as well.[3]  At this point, Arrowood is at the front of the line directly in front of the cashier.  The cashier does not appear to warn Arrowood, nor does anyone claim that she does.  Arrowood moves to the area where one typically bags groceries, her back facing the spill just a step or two behind her. At 4:26:30, after bagging her purchases, Arrowood turns and immediately slips on the spill.[4]

Arrowood's fall occurred approximately three minutes and ten seconds after the spill, just short of two minutes after the other store employee twice walks within inches of the spill, and 18 seconds after the patron appears to tell the cashier something before exiting the store.  The fall being somewhat dramatic, several patrons and employees turn to see what has happened.  Immediately after the fall, at approximately 4:26:41, the cashier in question also turns her head, seems to take notice of the fall, and, in stride, picks up what appears to be an intercom handset, ostensibly to say something. Shortly thereafter a manager arrives on the scene.[5]

## ANALYSIS

Arrowood is a business invitee.  Accordingly, the defendant has a duty to exercise

---

[3] To be sure, the footage is not definitive on this point. All of the events herein described, however, are at least reasonable inferences that can be drawn from viewing the footage.

[4] In an effort by defense counsel to suggest there may have been no spill at all, there was some dispute at oral argument over whether she slipped on some substance or, alternatively, tripped on the small trash can.  While there is other sufficient evidence that there was a spilled substance, *see supra* note 2, the nature of Arrowood's fall also supports the conclusion that it was a substance, not the trash can, which caused the fall. Consistent with slipping, Arrowood's feet can be seen sliding out from under her and pushing the trash can away along with her, as opposed to pitching forward as one typically would from tripping over an object like a trash can.

[5] At 4:27:07, a manager arrives and approaches Arrowood.  At oral argument, counsel acknowledged that this individual was indeed a store manager.

ordinary care to keep the premises in a reasonably safe condition for her use. *See Rawls v. Hochschild, Kohn & Co.*, 113 A.2d 405, 407 (Md. 1955). A proprietor can be liable for physical harm to an invitee caused by a condition of the premises if he or she: (a) knows or by exercise of reasonable care could discover the condition, (b) should expect that the invitee will not discover the danger, or will fail to protect herself against it, and (c) invites entry upon the land without (1) making the condition safe, or (2) giving a warning. *See Mondawmin Corp. v. Kres*, 266 A.2d 8, 12-13 (Md.1970). When another patron creates the danger, as is the case here, the proprietor may be liable if he or she had notice and sufficient opportunity to either correct the problem or warn the customers. *See Keene v. Arlan's Dep't Store of Baltimore, Inc.*, 370 A.2d 124, 128 (Md. Ct. Spec. App. 1977). Either actual or constructive notice is sufficient. *See Rawls*, 113 A.2d at 408.[6]

In addition to showing that the defendant had notice, the plaintiff must show that knowledge of the condition was gained in sufficient time to give the owner the opportunity to remove it or to warn the invitee. *See Rehn v. Westfield America*, 837 A.2d 981, 984 (Md. Ct. Spec. App. 2003); *see also Keene*, 370 A.2d at 128. Whether there has been sufficient time for a business proprietor to discover, cure, clean up, or warn of a dangerous condition depends on the circumstances surrounding the incident. *See Deering Woods Condo. Ass'n v. Spoon*, 833 A.2d 17, 24-25 (Md. 2003)(citing *Moore*, 182 A. at 440).

---

[6] The following is an oft-cited standard for constructive notice: "It is not necessary that there be proof that the inviter had actual knowledge of the conditions creating the peril, it is enough if it appears that it could have discovered them by the exercise of ordinary care...so that, if it is shown that the conditions have existed for a time sufficient to permit one under a duty to know of them, to discover them, had he exercised reasonable care, his failure to discover them may in itself be evidence of negligence sufficient to charge him with knowledge of them." *Moore v. Amer. Stores Co.*, 182 A. 436, 440 (Md. 1936).

In this case, there is sufficient evidence from which a jury could reasonably conclude that the defendant was negligent in failing to maintain the premises in a reasonably safe condition. Significantly, there is no bright-line rule for how much time can constitute constructive knowledge or adequate time to either remove the condition or to warn.[7] Here, unlike in the vast majority of reported cases, there is surveillance footage of the entire incident from which the jury can assess actual or constructive knowledge and the adequacy of time to clean up the spill or warn customers. Drawing all reasonable inferences in favor of the plaintiff, one might find that the defendant had actual knowledge of the spill.[8] Moreover, the evidence from which constructive knowledge might be found is substantially stronger. The spill occurred a few feet from the cashier and remained there for over three minutes.[9] In addition to the spill itself, a trash can was moved from its position against the wall next to the cashier and placed directly in the

---

[7] Whether a storekeeper was reasonable in failing to discover a hazardous condition is a question of fact, which "requires a consideration of the nature of the condition, its foreseeable consequences, the means and opportunities of discovering it, the diligence required to discover and correct it, and the foresight which a person of ordinary prudence would have exercised under similar circumstances." *Rawls*, 113 A.2d at 410; *see also Rehn*, 837 A.2d at 984 ("What will amount to sufficient time depends upon the circumstances of the particular case...").

[8] The employee cashier denies by affidavit any knowledge of the spill, but this has not been subject to cross-examination. In light of the surveillance footage, there is evidence from which one could find that the defendant did have actual knowledge of the spill. Evidence supporting this conclusion includes the footage of the cashier turning her head toward the location of the spill immediately after it occurred, footage of the other store employee twice walking within inches of the spill, and footage that appears to show the patron who spilled the cottage cheese saying something to the cashier before exiting the store, followed by the cashier appearing to acknowledge the spill. (*See* Exhibit A).

[9] While it is true that an employee's proximity to the spill alone may not support an inference that she saw it, *see, e.g., Lusby v. Baltimore Transit Co.*, 72 A.2d 754, 756 (Md. 1950), it is not only the cashier's proximity that is being relied upon here. Further, in the cases which stressed that proximity alone is not enough, there was not surveillance footage from which to observe the spill and the employee, but rather merely evidence of how close the employee's "post" was to the spill. *See id.*

flow of foot traffic toward the store exit, drawing more attention to the area.  Relevant to whether the spill was observable, several patrons can also be seen looking at the spill and walking around it. Additionally, whether or not it can be said that she actually saw the spill, a jury could find that the other store employee who twice walked within inches of the spill should have seen it.

As to whether there was sufficient time to "cure" the hazard or warn patrons, the minimal effort with which this accident could have been prevented is instructive. First, immediately after the fall, the cashier can be seen speaking into what appears to be an intercom receiver.  She is able to do so without slowing her pace in ringing up purchases.  A manager arrives shortly thereafter, which suggests that at least the placement of a warning cone or "wet floor" sign, if not the removal of the spill, could have been reasonably achieved in the time available. Nothing that extensive, however, would have been necessary to prevent this injury. At the very least, the cashier had the time and opportunity to orally warn the patrons in her line of the proximity of the spill.  It is undisputed that she did not.

Cases should not be submitted to the jury if a finding of constructive notice rests only on speculation or mere surmise.[10]  A finding of constructive notice in this case, however, would not have to rest on speculation, but rather could be based on evidence not present in the majority of

---

[10] "The evidence is legally sufficient to warrant submission of a case to the jury if it rises above speculation or conjecture, and so affords the rational basis needed for a determination that the defendant was guilty of negligence which produced the accident. A mere surmise that there may have been negligence will not justify the court in permitting the case to go to the jury." *Moulden v. Greenbelt Consumer Services, Inc.*, 210 A.2d 724, 726 (Md. 1965).

cases--namely, the surveillance footage.[11]  Here, unlike in most cases, the jury would not have to reconstruct the scene based solely on circumstantial evidence such as witness comments, wilting vegetables, proximity of employees, or guesses as to the passage of time. Rather, the jury can watch the entire scene unfold, consider all the circumstances, and make their determination based not on conjecture, but on the video.  For the foregoing reasons, the defendant's motion for summary judgment will be denied.

    A separate order follows.


  January 19, 2006                                              /s/
Date                                                       Catherine C. Blake
                                                              United States District Judge

---

[11] A common issue in "slip-and-fall" cases is whether the circumstantial evidence supports inferences about how long the condition had been present and, thus, whether that time lapse supports a finding of constructive knowledge. Many claims have failed because the plaintiff could not present any evidence definitively showing how long the condition was present. *See, e.g., Maans v. Giant of Maryland, L.L.C.*, 871 A.2d 627, 634-35 (Md. Ct. Spec. App. 2005); *Rehn*, 837 A.2d at 987; *Rawls*, 113 A.2d at 410. For example, where there was evidence supporting that a spill was there for "less than four minutes," the court found it significant that "less than four minutes" could still mean a matter of seconds before the accident occurred, and that the plaintiff could present no evidence to the contrary. *See Rehn*, 837 A.2d at 985-87. Additionally, the state of the spill may or may not support an inference that it had been on the floor for a long time. *See, e.g., Burwell v. Easton Memorial Hospital*, 577 A.2d 394, 396 (Md. Ct. Spec. App. 1990)(lettuce); *Moulden,* 210 A.2d at 726 (green bean); *cf. Kurtz v. Wal-Mart Stores, Inc.*, 338 F.Supp.2d. 620, 621 (D.Md 2004)(liquid); *and Moore*, 182 A. at 440 (grease)(The *Kurtz* case has an excellent discussion of the importance of analyzing the particular substance in question.).  In this case, however, the circumstantial evidence is sufficient for a jury to make a determination about the length of time the spill was present and the employees' opportunity to observe and correct the danger.